IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. : _____

JENNIFER KOSINSKI,
an individual,

       Plaintiff,

v.

SQUARE ONE ENTERTAINMENT,
INC., a Florida corporation,
and OFFER VINCE SHLOMI,
a/k/a VINCE OFFER, a/k/a
VINCE SHLOMI, an individual,

       Defendants.

_____/

## COMPLAINT

Plaintiff, JENNIFER KOSINSKI, (hereinafter "Plaintiff" or "Kosinski"), by and through

her undersigned counsel, sues Defendants, SQUARE ONE ENTERTAINMENT, INC. ("Square

one") and OFFER VINCE SHLOMI, a/k/a VINCE OFFER, a/k/a VINCE SHLOMI ("Shlomi")

(hereinafter collectively referred to as "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Kosinski brings this action against Square One and Shlomi to recover damages in

excess of $75,000.00, exclusive of interest, costs and attorney's fees.  Through this action,

Kosinski seeks to recover money damages for unpaid wages under the laws of the United States

and for the intentional torts of battery and intentional infliction of emotional distress.

2.      Shlomi is the president and owner of Square One and employed Kosinski as

Square One's customer service representative and his personal chaperone and personal assistant

for nearly one year. During the majority of that time period, Kosinski was at Shlomi's beck and call for 24 hours a day, seven days a week. Square One, through Shlomi, violated the laws of the United States by failing to pay Kosinski overtime pay for the hundreds to thousands of overtime hours that she worked for Square One.

3.    Moreover, Shlomi, during the entirety of Kosinski's employment with Square One, treated Kosinski in an inappropriate and improper manner. Shlomi often touched Kosinski in an inappropriate manner, despite her demands to stop, stalked her, treated her in a controlling manner, and intentionally caused Kosinski to suffer emotional distress. Shlomi's willful acts have caused damage.

## THE PARTIES

4.    Plaintiff, Kosinski, is an individual, above the age of eighteen, who resides in New York State. During some material times and during a large portion of her employment with Square One, she resided and worked in the State of Florida, and within this District.

5.    Defendant, Square One, is a Florida corporation with its principal place of business in Miami Beach. Square One has done and continues to do substantial business in the State of Florida and in the Southern District of Florida. At all material times, Square One was the employer of Kosinski.

6.    Defendant Shlomi is an individual, above the age of eighteen, who resides in Miami Beach, Florida. Shlomi is the owner and president of Square One.

## JURISDICTION AND VENUE

7.    The acts and omissions described herein and giving rise to this lawsuit occurred, in substantial part, in the Southern District of Florida.

2

8.    This Court has personal jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 (Section 216 for jurisdictional placement) (the "Act"). This Court has pendant jurisdiction over the intentional tort claims against Shlomi.

9.    This Court has jurisdiction over the Defendants as Square One and Shlomi conduct substantial business in the Southern District of Florida, failed to pay wages in the Southern District of Florida, and committed tortuous acts in the Southern District of Florida. This Court also has subject matter jurisdiction over the claims asserted herein, and venue is proper in the Southern District of Florida.

10.    In addition, there is diversity of jurisdiction as Plaintiff is a resident of the State of New York and the Defendants are residents of the State of Florida. The amount of damages sought by the Plaintiff is in excess of $75,000.00.

11.    The Plaintiff is a covered employee for purposes of the Act. During most times material, Plaintiff worked for Square One as an employee within this judicial district.

## GENERAL ALLEGATIONS

### A.    What is Square One?

12.    Shlomi is the president and owner of Square One, a company known mostly for selling direct response products, i.e. "As Seen On TV" products, known as the Slap Chop and ShamWow.

13.    Prior to forming Square One, Shlomi was an actor, movie producer, movie director, and writer. In 1999, he wrote, produced and directed and starred in a failed movie called "The Underground Comedy Movie." After he was able to sell a limited amount of units of the movie through television infomercials, Shlomi attempted to sell other products through this medium to the mass market.

14.     Shlomi began by marketing a towel that he was selling at malls and fairs, called the ShamWow. He made a low budget commercial with himself as the pitchman. The product made millions of dollars on television and was also widely distributed in retail stores such as Walmart, CVS, Walgreens, and Bed, Bath, and Beyond.

15.     After about a year of the ShamWow being sold on television, Shlomi decided to release another product called the Slap Chop, which is a kitchen, chopping device. Shlomi developed another infomercial and again made millions of dollars selling this product.

16.     The sales of the ShamWow and the Slap Chop occur through Square One.

**B.     Kosinski's Hiring, Employment and Job Responsibilities at Square One**

17.     In 2009, Kosinski met Shlomi in Miami.  A few months thereafter, Kosinski bumped into Shlomi in New York City. Shlomi invited Kosinski to dinner with a Square One employee, Courtney Bingham.

18.     During that dinner, Shlomi offered Kosinski a job as a customer service representative for Square One.

19.     Kosinski began her employment at Square One Entertainment, Inc. in the middle of July 2009. At the beginning of her employment, Kosinski's main responsibility was to respond to emails as a customer service representative, using the e-mail address ronny@squareoneent.com. Her job responsibilities, however, quickly expanded.

20.     At first, Kosinski devoted endless hours to Square One Entertainment as a customer service representative.  She often worked ten hours per day just returning emails, despite that Shlomi initially promised her that the job would only take approximately one hour of work on the computer each day. Kosinski was initially excited about this part time opportunity

as it allowed her to make some extra money, while at the same time, having the freedom to continue modeling and pursue that dream.

21.     Initially, Square One paid Kosinski $2,000.00 per month, supposedly for a limited amount of hours per month.   However, Shlomi's representations about the scope of this employment opportunity turned out to be false.

22.     Within a month of being employed at Square One, Kosinski's salary was raised to $4,500.00 per month.

23.     In August 2009, after one month of employment with Square One, Kosinski's lease on her New York City apartment expired.   At that time, Shlomi offered greater job responsibilities to Kosinski, in addition to the many hours of customer service responsibilities she was already tasked with.   In exchange for free rent in one of the bedrooms of his condominium in Miami Beach and free groceries, Kosinski became Shlomi's personal assistant in additional to her customer service and other responsibilities on behalf of Square One and Shlomi.

24.     Kosinski's additional responsibilities included cleaning Shlomi's condominium, grocery shopping, preparation of his meals and cooking.

25.     Despite that Kosinski, in each week that she worked for Square One, worked well in excess of forty hours per week, Square One never paid Kosinski any overtime.

26.     Indeed, Kosinski's job responsibilities could not be completed in just one hour per day on the computer, nor was that the amount of time that Shlomi demanded from Kosinski, as Square One's employee.   As discussed above, Kosinski spent in excess of seven hours per day just on the computer responding to complaints from customers.   In addition to this, Kosinski had other responsibilities that required her to devote additional time to her job at Square One.

5

27.    For instance, Kosinski was the only person at Square One answering e-mails of customer complaints, questions, and concerns about its two products, the Slap Chop and ShamWow. It was Shlomi's desire to keep the customer service regarding e-mailed complaints regarding these products "in-house." The phone calls were received by a separate customer service line. If there was an e-mail regarding a problem with the orders, product, websites, or other issues, Kosinski would review the complaint and would report the problem to Shlomi.

28.    The central reason for Shlomi's desire to keep the customer service issues "in-house" was because of the critical and sensitive nature of these problems. For instance, one of the most common complaints regarding the Slap Chop was the breaking of its "splash guard" which posed a choking concern, since broken pieces of plastic were ending up in the chopped food. As part of her job, Kosinski had various communications with the Chinese manufacturers of the Slap Chop to help make a stronger, more durable guard for this product.

29.    Another common issue involved the difference between the Deluxe Slap Chop and the regular Slap Chop. The Deluxe model was supposed to have superior Japanese Stainless Steel blades.[1]   Many customers inquired of Square One as to whether the product that was delivered was the model that was ordered.

30.    Kosinski's job responsibilities at Square One did not stop at being a customer service representative. In addition to her responsibilities as a customer service representative, Shlomi, as the owner and president of Square One, asked Kosinski, a young model, to attend dinners, parties, and events with him.

31.    Both Shlomi and Kosinski were well aware that this was not a friendly invitation or a date, but was a business responsibility and part of Kosinski's job responsibilities at Square

---

[1]    Plaintiff is investigating a potential *qui tam* action on this issue.

SCHLESINGER & COTZEN, P.L.

799 BRICKELL PLAZA · SUITE 700 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

One.   Whether escorting Shlomi to a party, to a dinner with business associates, or accompanying Shlomi to a movie, Kosinski believed that this was part of her job and that her employment would be terminated if she did not fulfill these responsibilities.

32.   At these events, Shlomi required Kosinski to keep a watchful eye on him and make sure he did not drink too much and did not get into trouble.  One part of Kosinski's job was making sure that Shlomi drank large amounts of water when he drank alcohol.  On the occasions that Shlomi drank alcohol without water, Kosinski observed him in an out-of-control, intoxicated state.

33.   Indeed, Shlomi does not handle alcohol well.  For instance, on February 7, 2009, Shlomi was arrested in Miami Beach and charged with felony aggravated battery after an altercation with a prostitute during a time in which he was intoxicated.  According to an arrest affidavit, Shlomi punched the prostitute several times after she bit his tongue when he kissed her.

34.   Kosinski's chaperoning of Shlomi at parties, events, and dinners was an important part of her job responsibilities.  In fact, Shlomi would berate Kosinski if she ever left him unattended at these events, informing her that it was imperative that she "buffed" people out.

35.   Because Kosinski was required to attend to Shlomi's needs 24 hours per day, 7 days per week, she was always "on the job."  Even during one of Kosinski's two out of town trips to see her family, Shlomi demanded that she return to Miami Beach to accompany him to a party.

36.   On one occasion when she was took a short vacation to Ohio to visit family and friends, Shlomi texted Kosinski:  "I basically need you "all the time" and don't need someone there who's asking me "when don't you need me" so think about it. Enjoy your break. See your

Friends becuz I don't need someone "demanding" "freedom" becuz I'm "a dictator" type so that stresses me out. When someone wants to do somthin else." (Mistakes in original).

37.     Unbelievably, on one occasion, when Kosinski wanted to travel to visit her step father who was stricken with cancer, Shlomi responded by asking, "Why don't you just see him when he's in the grave?"

## C.     Shlomi Treated Kosinski in an Extremely Inappropriate and Tortious Manner

38.     Unfortunately for Kosinski, Kosinski's role as customer service representative, personal chaperone and personal assistant was not acceptable.  He wanted more.  Shlomi demanded that, as part of her job responsibilities, Kosinski be at his constant beck and call.  For instance, Shlomi once sent Kosinski a text stating that he needed her "all the time."

39.     Indeed, if Kosinski was not tending to her responsibilities as discussed above, she was assisting Shlomi, a movie director, writer and producer, with editing, booking appointments, and reading scripts.

40.     Simply put, Kosinski's job required her to be completely devoted to Shlomi in terms of her time requirements until her termination on April 2, 2010.  Shlomi placed undue pressure upon Kosinski to not leave his side and be available to him and Square One twenty four hours a day, seven days a week.

41.     Moreover, Shlomi's behavior towards Kosinski was bizarre and inappropriate. This inappropriate behavior occurred despite that this was a simple employer-employee relationship.  It was at all times platonic and there was never, at any time, any romantic behavior between Kosinski and Shlomi, even though that is what Shlomi clearly desired.  Kosinski did

everything possible to affirm and reaffirm to Shlomi that this relationship was strictly an employer-employee relationship and would never develop into anything romantic.

42.     Whether during "normal business hours" or not, Kosinski had to ask Shlomi permission to go anywhere. Shlomi rarely permitted Kosinski to leave his side, except during the early morning hours before he woke up. During the rare times that he let Kosinski go out, he would interrupt her "time off" with paranoid and demanding texts and phone calls. Shlomi would often make excuses as to why Kosinski couldn't or shouldn't go somewhere without him. Shlomi even prevented Kosinski from joining a running group that met one evening a week for fear that she would meet new people.

43.     In addition, Shlomi stalked Kosinski's ex-boyfriend and even took pictures of him and texted these pictures to Kosinski.

44.     He also required Kosinski to give him the spellings of the names of her friends so he could google them. He told her that since "he is Square One" and there was the possibility that these people could meet him, he felt that it was his right to know everything about them.

45.     Kosinski was forced to cut off communication with many of her friends because of Shlomi's behavior. Shlomi was extremely controlling and he tried to cut her friends out of her life.

46.     In addition, Shlomi exerted constant pressure upon Kosinski to change the nature of their relationship and to be romantically involved. As part of this pressure, Shlomi offered Kosinski money to sleep in the same bed and for her eggs. Shlomi offered Kosinski $20,000 and a paid one month vacation for her parents to travel the world in exchange for her eggs. For obvious reasons, Kosinski found this advance extremely disturbing, and told him so. Suffice it to say, Kosinski refused this offer.

SCHLESINGER & COTZEN, P.L.

799 BRICKELL PLAZA · SUITE 700 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

47.     In addition, Shlomi wanted Kosinski to be his love slave.  He offered money to Kosinski to sleep in his bed with him, saying that "nothing would happen."  Kosinski did not believe him and declined the offer.

48.     Despite her constant rebuffing of a romantic relationship, Shlomi persisted in his attempts to convince Kosinski to become romantically involved.  This led to verbal assaults.  For instance, Shlomi called Kosinski a "bitch" and a "cunt" because she would not tell him the "secret formula" that he claims existed for her to like him in a romantic manner.

49.     Shlomi watched Kosinski, even when she wasn't with him.  For instance, one day she was laying on the beach.  She observed Shlomi on the balcony of his beachfront condominium observing her through binoculars.

50.     In addition, Shlomi would force Kosinski, as part of her job, to go to strip clubs with him.  Kosinski told him that she did not feel comfortable going to these strip clubs, but Shlomi told her that she would be terminated if she did not.

**D.      Shlomi's Behavior Towards Kosinski Included Unwanted Touching**

51.     In addition to the improper demands that Shlomi made upon Kosinski, Shlomi often touched Kosinski in an inappropriate manner, including hugging and groping.  Kosinski, on each occasion, informed Shlomi that his improper and unwanted touching was inappropriate, but he continued these advances.

52.     On a near daily basis, Shlomi would hug Kosinski and kiss her on the cheek, despite that she told him that this behavior was inappropriate.  Shlomi also gave Kosinski bear hugs.  These unwanted advances and touching made Kosinski feel uncomfortable, but Shlomi continued.

10

53.     On one occasion, Kosinski and Shlomi were at a business dinner with another Square One employee, Courtney Bingham and her friends.     At that dinner, Shlomi was constantly putting his arm around Kosinski, hugging her, and kissing her repeatedly on the cheek, despite her requests that he stop this behavior and his understanding that she did not want to be touched.  Bingham and her friends later commented to Kosinski that she looked extremely uncomfortable and how inappropriate Shlomi's behavior was.

54.     Shlomi also often inappropriately touched Kosinski's shoulders and tried to give her massages.  Shlomi was insulted when Kosinski did not want to give Shlomi a massage, which she believed was inappropriate behavior for an employee.  Kosinski informed Shlomi that she thought that was more of a sign of intimate affection between two people.

**E.     Square One Terminates Kosinski**

55.     On April 2, 2010, on behalf of Square One, Shlomi abruptly terminated Kosinski's employment.  She was fired because she received a text message at 5AM that morning and subsequently left the house without showing that text message to him.  Shlomi was jealous because of his belief that the text message was from a man and terminated Kosinski's employment for that reason.

**COUNT I**
**UNPAID WAGES UNDER THE FAIR LABOR STANDARDS ACT**
**(AGAINST SQUARE ONE)**

56.     Plaintiff repeats and reincorporates paragraphs 1 through 55 as if fully set forth herein.

57.     This action is brought by Kosinski to recover from Square One unpaid wages, as well as an additional amount as liquidated damages, costs and reasonable attorney's fees under

11

the provisions of 29 U.S.C § 201 et seq., and specifically under the provisions of 29 U.S.C. § 206.

58.     Jurisdiction is conferred on this Court by Title 28 U.S.C § 1337 and by Title 29 U.S.C. § 216(b). Square One, is and, at all times pertinent to this Complaint, was engaged in interstate commerce. At all times pertinent to this Complaint, Square One operates as an organization which sells and/or markets its goods to customers throughout the United States and also sells goods and transports them across state lines of other states. Square One obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees. Upon information and belief, the annual gross revenue of Square One was at all times material hereto in excess to $500,000.00 per annum, and/or Kosinski and those similarly-situated by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

59.     By reason of the foregoing, Square One is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3(r) and 3(s) of the Act, 29 U.S.C § 203(r) and 203(s) and /or Kosinski was and/or is engaged in interstate commerce for Square One. Square One's business activities involve those to which the Fair Labor Standard Act applies. Through its business activities, Square Once affects interstate commerce. Kosinski's work for her employer likewise affects interstate commerce.

60.     At all times material hereto, Square One failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and §516.4 et. Seq. in that Kosinski performed services but no provision was made by Square One to pay her as provided in the Act.

SCHLESINGER & COTZEN, P.L.

799 BRICKELL PLAZA · SUITE 700 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

61. Square One knew and/or showed reckless disregard of the provisions of the Act concerning the payment of wages as required by the Fair Labor Standards Act and remains owing Kosinski these wages from July 2009 through April 2, 2010 above. Kosinski is entitled to recover liquidated damages. The employer never posted any notice, as required by the Fair Labor Standards Act and Federal Law, to inform employees of their federal rights to wage payments.

62. During the time of Plaintiff's employment, she regularly worked well in excess of 40 hours per week and was not paid for that time.

63. The salary that Plaintiff was paid was not to cover all of the hours worked, but instead was intended to cover a forty hour work week.

64. Square One willfully and intentionally refused to pay Kosinski her wages as required by the law on the United States as set forth above and remains owing Kosinski these wages from July 2009 through April 2, 2010.

65. Kosinski has hired Schlesinger and Cotzen, P.L. to represent her interests in this matter and has agreed to pay reasonable attorney's fees and costs associated with this lawsuit.

**WHEREFORE,** Plaintiff Kosinski requests that this Honorable Court:

A. Enter judgment for Kosinski and against Square One on the basis of Square One's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. and other Federal Regulations; and

B. Award Kosinski actual damages in the amount shown to be due for unpaid wages, with interest; and

C. Award Kosinski an equal amount in liquidated damages; and

D. Award Kosinski reasonable attorneys' fees and costs of suit; and

SCHLESINGER & COTZEN, P.L.

799 BRICKELL PLAZA · SUITE 700 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

E.     Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

## COUNT II
## CIVIL BATTERY
## (AGAINST SHLOMI)

66.     Plaintiff re-alleges and incorporates paragraphs 1 through 55 as if fully set forth herein.

67.     As fully set forth above, Shlomi intentionally touched Kosinski in a harmful or offensive way.

68.     This inappropriate touching included hugging, kissing, bear hugging, attempted massages, and other touching that put Kosinski in an uncomfortable situation.

69.     At all times, Kosinski informed Shlomi that the touching was inappropriate and unwanted.  Despite Kosinski's pleas, Shlomi continued these advances.

70.     In addition, Shlomi exerted constant pressure upon Kosinski to change the nature of their relationship and to be romantically involved.  As part of this pressure, Shlomi offered Kosinski money to sleep in the same bed and for her eggs.  Kosinski refused these offers.

71.     These acts have caused Kosinski to suffer damages.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in its favor against Defendant, OFFER VINCE SHLOMI, and award actual damages, interest, and court costs, and for such other and further relief as this Court deems just and proper.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST SHLOMI)

72.     Plaintiff adopts and realleges paragraphs 1 through 55 above as it fully set forth herein.

14

73.     By his extreme and outrageous conduct towards Kosinski, Shlomi has intentionally or recklessly caused her severe emotional distress.

74.     This conduct includes, but is not limited to, Shlomi stalking Kosinski, controlling her schedule, not letting her leave his side, cutting off her communications with friends and family, inappropriate touching, inappropriate comments, and other conduct described above that caused distress.

75.     In addition, Shlomi exerted constant pressure upon Kosinski to change the nature of their relationship and to be romantically involved.  As part of this pressure, Shlomi offered Kosinski money to sleep in the same bed and for her eggs.  Kosinski refused these offers.

76.     Shlomi's conduct was intentional or reckless.  Shlomi intended his behavior when he knew or should have known that emotional distress would likely result.

77.     Shlomi's conduct was outrageous and was beyond all bounds of decency, and was atrocious and utterly intolerable in a civilized community.

78.     Shlomi's conduct caused Kosinski to suffer severe emotional distress.

79.     Kosinski reserves the right to amend her claim to add a claim for punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor against Defendant OFFER VINCE SHLOMI and order SHLOMI to pay damages, interest, and other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands trial by jury on all issues so triable.

Dated this <u>1st</u> day of April, 2011.

Respectfully submitted,

SCHLESINGER AND COTZEN, P.L.
Attorney for Plaintiff
799 Brickell Plaza, Suite 700
Miami, FL 33131
Telephone: (305) 373-8993
Facsimile: (305) 373-8098


By:   <u>/s/ Michael L. Cotzen</u>
   Michael J. Schlesinger, Esq.
   Florida Bar No.: 141852
   Email: mjs@scflalaw.com
   Michael L. Cotzen, Esq.
   Florida Bar No.: 166472
   Email: mc@scflalaw.com